E-filing

1  **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2  Name  ROMERO        JOSE        L
        (Last)        (First)       (Initial)

3  Prisoner Number  V-91683

4  Institutional Address  P.V.S.P., P.O. BOX 8502, COALINGA. CA  93210

5

6

7  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8  JOSE LENIN ROMERO
  (Enter the full name of plaintiff in this action.)

9  CV 08

                   1385

            vs.

Case No.  MHP

10  JAMES A. YATES, WARDEN
            (To be provided by the clerk of court) (PR)

11  PLEASANT VALLEY STATE PRISON

          **PETITION FOR A WRIT**
**OF HABEAS CORPUS**

12

13

14  (Enter the full name of respondent(s) or jailor in this action)

15

16  Read Comments Carefully Before Filling In

17  When and Where to File

18        You should file in the Northern District if you were convicted and sentenced in one of these

19  counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20  San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21  this district if you are challenging the manner in which your sentence is being executed, such as loss of

22  good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were not convicted and sentenced in

24  one of the above-named fifteen counties, your petition will likely be transferred to the United States

25  District Court for the district in which the state court that convicted and sentenced you is located. If

26  you are challenging the execution of your sentence and you are not in prison in one of these counties,

27  your petition will likely be transferred to the district court for the district that includes the institution

28  where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS    - 1 -

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are.  This usually means the Warden or

3  jailer.  Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                 County Superior Court, Oakland):

14          _SAN FRANCISCO CTY. SUPERIOR COURT___SAN FRANISCO, CA_

15                 Court                              Location

16          (b)    Case number, if known __189270_____

17          (c)    Date and terms of sentence _16 YRS - LIFE ; AUG. 12, 2005_

18          (d)    Are you now in custody serving this term?  (Custody means being in jail, on

19                 parole or probation, etc.)              Yes _✓_    No _____

20                 Where?

21                 Name of Institution: PLEASANT VALLEY STATE PRISON

22                 Address: P.O. BOX 8500, COALINGA  CA  93210

23      2. For what crime were you given this sentence?  (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26      _MURDER, SECOND DEGREE    (PENAL CODE SEC. 187)_

27      _____

28      _____

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3. Did you have any of the following?

    Arraignment:                           Yes ✓    No _____

    Preliminary Hearing:                Yes ✓    No _____

    Motion to Suppress:                Yes ✓    No _____

4. How did you plead?

    Guilty _____    Not Guilty ✓    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury ✓    Judge alone _____    Judge alone on a transcript _____

6. Did you testify at your trial?              Yes _____    No ✓

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment              Yes ✓    No _____

    (b)    Preliminary hearing       Yes ✓    No _____

    (c)    Time of plea              Yes ✓    No _____

    (d)    Trial                     Yes ✓    No _____

    (e)    Sentencing               Yes ✓    No _____

    (f)    Appeal                   Yes ✓    No _____

    (g)    Other post-conviction proceeding N/A Yes _____    No _____

8. Did you appeal your conviction?        Yes ✓    No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal            Yes ✓    No _____

        Year: 2007    Result: AFFIRMED

        Supreme Court of California    Yes ✓    No _____

        Year: 2007    Result: REVIEW DENIED 5/9/2007

        Any other court           Yes _____    No ✓

        Year: _____    Result: _____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

1    petition?                                      Yes ✓    No____

2    (c)    Was there an opinion?                    Yes ✓    No____

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                    Yes ____    No ✓

5    If you did, give the name of the court and the result:

6    ___N/A_____

7    _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?              Yes ____    No ✓

10    [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11    challenged the same conviction you are challenging now and if that petition was denied or dismissed

12    with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13    for an order authorizing the district court to consider this petition. You may not file a second or

14    subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15    U.S.C. §§ 2244(b).]

16    (a)    If you sought relief in any proceeding other than an appeal, answer the following

17    questions for each proceeding. Attach extra paper if you need more space.    N/A

18    I.    Name of Court: _____

19    Type of Proceeding: _____

20    Grounds raised (Be brief but specific):

21    a._____

22    b._____

23    c._____

24    d._____

25    Result: _____ Date of Result:_____

26    II.    Name of Court: _____

27    Type of Proceeding: _____

28    Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

N/A

1  a._____

2  b._____

3  c._____

4  d._____

5  Result: _____ Date of Result:_____

6  III.  Name of Court: _____

7  Type of Proceeding: _____

8  N/A  Grounds raised (Be brief but specific):

9  a._____

10  b._____

11  c._____

12  d._____

13  Result: _____ Date of Result:_____

14  IV.  Name of Court: _____

15  Type of Proceeding: _____

16  N/A  Grounds raised (Be brief but specific):

17  a._____

18  b._____

19  c._____

20  d._____

21  Result: _____ Date of Result:_____

22  (b)  Is any petition, appeal or other post-conviction proceeding now pending in any court?

23  Yes _____    No ✓

24  Name and location of court: _____

25  **B. GROUNDS FOR RELIEF**

26  State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1    need more space.  Answer the same questions for each claim.

2         [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3    petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4    499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5    Claim One: _TRIAL  COURT  ERRED  IN  REFUSING  TO  PERMIT_

6    _JURY  TO  CONSIDER  LESSER  OFFENSE  OF  VOLUNTARY  MANSLAUGHTER_

7    Supporting Facts: _SEE  ATTACHED  PETITION  FOR  REVIEW,_

8    _WITH  COURT  OF  APPEAL  OPINION_

9    _____

10   _____

11   Claim Two: _TRIAL  COURT  ERRED  IN  INSTRUCTING  JURY ON_

12   _THEORY  OF  FELONY - MURDER._

13   Supporting Facts: _SEE  ATTACHED  PETITION  FOR  REVIEW,_

14   _WITH  COURT  OF  APPEAL  OPINION_

15   _____

16   _____

17   Claim Three: _CALJIC  2.03  VIOLATES  U. S.  CONSTITUTION_

18   _____

19   Supporting Facts: _SEE  ATTACHED  PETITION  FOR  REVIEW_

20   _WITH  COURT  OF  APPEAL  OPINION ._

21   _____

22   _____

23        If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25   _____NONE_____

26   _____

27   _____

28   _____

PET. FOR WRIT OF HAB. CORPUS          - 6 -

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    _SULLIVAN V. LOUISIANA, 508 US. 275; IN RE WINSHIP, 397 U.S 358;_

5    _YATES v. EVATT, 500 U.S. 391; MARTINEZ v. BORG, 937 F2d. 422;_

6    _WARDIUS v. OREGON, 412 U.S. 470; SPEISER v RANDALL, 357 U.S. 513_

7    Do you have an attorney for this petition?                     Yes_____      No ✓

8    If you do, give the name and address of your attorney:

9    _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on _01 /18 /08_                    _Jose Lenin Romero_

14              Date                              Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

No. _____
Court of Appeal No. A111740
(San Francisco County No. 189270)


IN THE SUPREME COURT OF THE STATE OF CALIFORNIA


PEOPLE OF THE STATE OF CALIFORNIA,

     Plaintiff and Respondent,

  v.

JOSE ROMERO,

     Defendant and Appellant.


APPELLANT'S PETITION FOR REVIEW

Of the Decision and Opinion of the California Court of Appeal
First Appellate District, Division Four

Filed February 14, 2007

---

PHILIP M. BROOKS
Attorney at Law
State Bar No. 46237
1442-A Walnut St., #233
Berkeley, CA 94709
(510) 528-7996

Attorney for Appellant, Jose Romero
By appointment of the Court of Appeal
Pursuant to the Independent Case System
First District Appellate Project

## TOPICAL INDEX

TABLE OF AUTHORITIES ............................................... ii

PETITION FOR REVIEW ............................................... iii

QUESTIONS PRESENTED FOR REVIEW ................................... 1

REASONS FOR GRANTING REVIEW ..................................... 2

STATEMENT OF THE CASE AND STATEMENT OF FACTS ................... 4

ARGUMENT .......................................................... 4

    I. APPELLANT'S CONVICTION FOR MURDER MUST BE REVERSED
    BECAUSE THE TRIAL COURT ERRED IN REFUSING TO PERMIT THE
    JURY TO CONSIDER THE LESSER INCLUDED OFFENSE
    OF VOLUNTARY MANSLAUGHTER ................................. 4

    II. APPELLANT'S CONVICTION MUST BE REVERSED BECAUSE
    THE TRIAL COURT'S INSTRUCTIONS PERMITTED THE JURY TO
    RETURN A VERDICT OF MURDER BASED ON A
    THEORY OF FELONY-MURDER, IN VIOLATION OF
    *PEOPLE V. IRELAND* (1969) 70 Cal.2d 522 ........................... 10

    III. CALJIC NO. 2.03 VIOLATES THE FEDERAL CONSTITUTION'S
    GUARANTEE OF IMPARTIALITY BETWEEN DEFENSE AND
    PROSECUTION ................................................. 15

CONCLUSION ....................................................... 18

CERTIFICATE ...................................................... 19

TABLE OF AUTHORITIES

## PETITION FOR REVIEW

Appellant, Jose Lenin Romero, pursuant to rule 8.500, California Rules of Court, hereby petitions the Court for review of the unpublished opinion and decision of the California Court of Appeal, First Appellate District, Division Four, filed February 14, 2007. A copy of the Court of Appeal's opinion is attached hereto as an appendix.

## QUESTIONS PRESENTED FOR REVIEW

1. Where the trial evidence included evidence of provocation and heat of passion and a sudden quarrel, and appellant testified that he lashed out at the victim in rage, without intent to kill, was it error for the trial court to refuse to instruct on voluntary manslaughter?

2. Is reversal required because the trial court gave instructions on felony-murder, thus erroneously permitting the jury to return a verdict of murder based on a finding that appellant killed in the course of an assault, without finding malice?

3. Does CALJIC No. 2.03 violate the due process clause of the federal Constitution?

1

## REASONS FOR GRANTING REVIEW

1. The dispute over voluntary manslaughter instructions in this case centers around the issue of provocation. Appellant argued that provocation is sufficient to support the giving of voluntary manslaughter instructions if it is sufficient to provoke an ordinarily reasonable person to act rashly, or without due deliberation and reflection. Respondent disagreed, and contended that it is not sufficient unless it would provoke an ordinarily reasonable person to kill. (RB, at p. 13.) The Court of Appeal declines to determine whether there was error, finding instead that any error was harmless because it "do[es] not believe a reasonable jury would have found that the provocation rose to such a level as to 'cause an ordinary person of average disposition to act rashly or without due deliberation and reflection.' [Citing *People v. Lee* (1999) 20 Cal.4th 47, 59.]" (Typed op'n., at p. 8.) The court offers no analysis of the facts in support of this conclusion, and appellant submits that it is incorrect, because the behavior of the victim here was certainly sufficient to provoke an ordinary person to rage. A grant of review would afford an opportunity for this Court to clarify the standards governing provocation for purposes of voluntary manslaughter.

2. It is undisputed in this case that both the trial court's instructions to the jury and the prosecutor's closing argument referred, improperly, to felony-murder because the only felony to which the doctrine could attach in this case was an assault, and the commission of an assault will not support a felony-murder conviction. (*People v. Ireland*

2

(1969) 70 Cal.2d 522; *People v. Hansen* (1994) 9 Cal.4th 300, 312-314.) Appellant argued that the error could not be held harmless because at this point, no one can say whether the jury returned its verdict of second-degree murder based on the erroneous felony-murder theory. The Court of Appeal, however, agrees with respondent that harmless error analysis is appropriate (typed op'n., at p. 10), and proceeds to find the error harmless because (1) the trial court did not call the felony-murder rule by name in its instructions, (2) the court did not specifically tell the jury that assault with a deadly weapon was a felony, and (3) therefore the misstatements of law in the prosecutor's closing argument would not have led the jury to rely on a felony-murder theory, because it must be presumed that the jury relied on the court's instructions, not the arguments of counsel, in reaching its verdict. (Typed op'n., at p. 12.)

A grant of review would afford this Court the opportunity to clarify the applicability of the rule of *People v. Guiton* (1993) 4 Cal.4th 1116, that where the court's instructions permit the jury to convict based on either a legally correct theory or a legally incorrect theory, and the appellate court cannot determine from the jury's general verdict which theory it adopted, reversal is required.

3. Although this Court has previously upheld CALJIC No. 2.03, appellant respectfully submits that this Court's jurisprudence concerning denial of defense-oriented "pinpoint" instructions, while approving prosecution-oriented "pinpoint" instructions such as CALJIC No. 2.03, violates the federal Constitution.

3

## STATEMENT OF THE CASE AND STATEMENT OF FACTS

For purposes of this petition, appellant adopts the statement of the case and statement of facts set forth in the opinion of the Court of Appeal. (Typed op'n., at pp. 1-4.)

## ARGUMENT

I

## APPELLANT'S CONVICTION FOR MURDER MUST BE REVERSED BECAUSE THE TRIAL COURT ERRED IN REFUSING TO PERMIT THE JURY TO CONSIDER THE LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER

The defense requested voluntary manslaughter instructions, based on evidence of provocation and heat of passion, noting that the victim had stolen appellant's money while he was out buying cigarettes for her, refused to return it, and then she refused to leave the apartment. (RT 8, 969-970.)   There was also a "sudden quarrel," caused by this provocation. (RT 8, 970-971.)

Defense trial counsel argued that it was not necessary to a verdict of manslaughter that the jury find that an ordinarily reasonable person would have reacted in exactly the same way as appellant did, but only that an ordinarily reasonable person would have lost reason and judgment. (RT 8, 971.)

4

he court, however, declined to give the instruction. (RT 8, 976-977, 978.)

Appellant submits this was error. A trial court must instruct the jury on every theory of the case which is supported by substantial evidence. (*People v. Edwards* (1985) 39 Cal.3d 107, 116; *People v. Geiger* (1984) 35 Cal.3d 510, 519; *People v. Flannel* (1979) 25 Cal.3d 668, 684.) Where the theory is that the defendant committed a lesser included offense, the court must instruct on the lesser included offense when there is evidence from which a jury composed of reasonable persons could conclude the defendant was guilty of the lesser crime. (*People v. Wickersham* (1982) 32 Cal.3d 307, 325; *People v. Flannel, supra*, 25 Cal.3d at p. 684.) Any doubts about the sufficiency of the evidence to warrant a requested instruction should be resolved in favor of the defendant. (*Flannel, supra*, 25 Cal.3d at p. 685.)

Here there was clearly evidence from which the jury could have concluded that appellant's reason was, in fact, obscured by passion, and therefore the subjective component of the test was present. The objective component of heat of passion is present if the victim engages in provocation that would arouse the passions of an ordinarily reasonable person. *(People v. Steele, supra*, 27 Cal.4th at pp. 1252-1253.) The law does not require any particular type of provocation, so long as the provocation is sufficient to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection, and from passion rather than judgment. (*People v. Breverman, supra*, 19 Cal.4th at p. 163.)

However, adequate provocation exists where there is a quarrel involving verbal threats and physical confrontation. (E.g., *People v. Logan* (1917) 175 Cal. 45, 47, 50; *People v. Elmore* (1914) 167 Cal. 205, 207-209, 211.) Adequate provocation also exists where the victim attacks property belonging to the defendant and threatens the defendant, and the defendant fears the victim will try to attack him. (*People v. Breverman, supra*, 19 Cal.4th at pp. 149-152, 162-164.) Adequate provocation likewise is present where the defendant and the victim angrily confront each other and scream and swear at each other. (*People v. Barton* (1995) 12 Cal.4th 186, 202.) Appellant's case is very similar to *Barton*. Here, as in *Barton*, the victim had committed a crime, the defendant was angry about the commission of the crime, and the victim and the defendant had a heated argument that led to the fatal blows. Appellant submits that this evidence was sufficient to entitle him to a jury determination of whether he acted in the heat of passion, and whether the provocation present was sufficient to cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection.

Moreover, contrary to the conclusion of the Court of Appeal, an examination of the entire record reveals a reasonable probability that the error affected the outcome. (Cal. Const., art. VI, § 13; *People v. Breverman, supra*, 19 Cal.4th at pp. 148-149; *People v. Watson* (1956) 46 Cal.2d 818, 836.) A "reasonable probability" under *Watson* requires "merely a reasonable chance, more than an abstract possibility" of

6

a different outcome." (*College Hospital, Inc. v. Superior Court* (1994) 6 Cal.4th 704,

715). It "does not mean more likely than not, but merely a reasonable chance, more than

an abstract possibility." (*Ghilotti v. Superior Court* (2002) 27 Cal.4th 888, 918; *accord,*

*People v. Elize* (1999) 71 Cal.App.4th 605, 616 ["reasonable possibility]; *In re Willon*

(1996) 47 Cal.App.4th 1080, 1098).

In appellant's case, the evidence was not overwhelming. His statements to

the police admitted the killing but explained how it occurred in the heat of passion and

upon a sudden quarrel. Furthermore, after initially attempting to conceal his commission

of the crime, due to fear, Mr. Romero then went to church and prayed, and ultimately

voluntarily called police to return to his home so that he could tell them the truth, because

he felt extreme remorse for what he had done.

In addition, the process of the jury's deliberations shows that it felt this was

a close case on the evidence. In the first place, appellant observes that nothing about the

jury's verdict excludes the possibility that, in convicting appellant, the jury may have

decided that he killed Ms. Soto as the result of a rash and unconsidered impulse. The

trial court's instructions told appellant's jury that such a state of mind was consistent with

guilt of second degree murder, although it would not support a finding of first degree

murder. In explaining the distinction between the two degrees of murder, the court

stated:

> "A cold, calculated judgment and decision may be arrived at in a short
> period of time, but *a mere unconsidered and rash impulse, even though it*

7

*includes an intent to kill*, is not premeditation and deliberation as will fix an unlawful killing as murder of the first degree."

(RT 9, 1011; emphasis supplied.)  Thus, the jury's verdict of second degree murder must be considered as quite possibly being based on a finding of unconsidered and rash impulse.

Next, appellant observes that the jurors submitted several requests to the court during deliberations, including a request to view the bat (CT 3, 642), a request to review appellant's videotaped statement (CT 3, 643), and finally a note indicating the jury was in disagreement as to which degree of murder was appropriate (CT 3, 644).  Such requests indicate the case is a close one, and the particular evidence or instructions requested by the jury are indications of particular points the jury finds troubling.  (See, e.g. *People v. Filson* (1994) 22 Cal.App.4th 1841, 1852; *People v. Markus* (1978) 82 Cal.App.3d 477, 480 (1978) [request for further instruction indicated jury was giving serious consideration to the defense]; *Osborne v. United States* (8th Cir. 1965) 351 F.2d 111, 118 [fact that jury deliberated some sixteen hours, covering two full working days, and that they requested an additional exhibit and the re-reading of the instructions, indicates the case was a close and a difficult one]; cf., *People v. Hernandez* (1988) 47 Cal.3d 315, 352-53 (1988) [absence of jury requests for review of evidence or instructions, and absence of statement of deadlock, indicates there was no jury deadlock].)

Also, the jury deliberated for approximately nine hours over two days

8

before finally reaching a verdict. (CT 2, 560; CT 3, 640-641.) The protracted nature of

the deliberations, by itself, shows that the jury found this to be a close and difficult case.

(*People v. Cardenas* (1982) 31 Cal.3d 897, 907 [12 hours of deliberations indicates close

case]; *People v. Rucker* (1980) 26 Cal.3d 368, 391 [9 hours]; *People v. Woodard* (1979)

23 Cal.3d 329, 341 [6 hours]; *People v. Collins* (1968) 68 Cal.2d 319, 332 [8 hours];

*People v. Bennett* (1967) 276 Cal.App.2d 172, 176 [10 hours]; *Osborne v. United States*

(8th Cir. 1965) 351 F.2d 111, 118 (8th Cir. 1965) [16 hours]; *Rhoden v. Rowland* (9th

Cir. 1999) 172 F.3d 633 [9 hours over 3 days].)

   Finally, it is noteworthy that, although the prosecution strongly argued for a

verdict of first degree murder, the jury rejected that alternative and found appellant guilty

only of second degree murder.

   Under the circumstances of this case, therefore, no one can say with any

confidence that a jury instructed on voluntary manslaughter and heat of passion would not

have returned a verdict of the lesser offense. Reversal is therefore required.

9

II

## APPELLANT'S CONVICTION MUST BE REVERSED BECAUSE THE TRIAL COURT'S INSTRUCTIONS PERMITTED THE JURY TO RETURN A VERDICT OF MURDER BASED ON A THEORY OF FELONY-MURDER, IN VIOLATION OF *PEOPLE V. IRELAND* (1969) 70 Cal.2d 522

As part of its instructions to appellant's jury regarding murder, the trial

court court stated as follows:

> "*If a person causes another's death, while committing a felony which is dangerous to human life, the crime is murder.* If a person causes another's death while committing a misdemeanor or infraction which is dangerous to human life under the circumstances of its commission, the crime is involuntary manslaughter."

(RT 9, 1014; emphasis added.)[1] The italicized portion of this instruction, which permits a

finding of murder based on the commission of an underlying felony without the necessity

of finding malice, describes second-degree felony-murder. The Court of Appeal has

found that appellant is correct that the evidence did not show the commission of any

felony which could lawfully serve as the predicate felony for a finding of felony-murder.

(Typed op'n., at p. 8-9.) If Helen Soto was killed during the commission of a felony, it

could only be the felony of assault with a deadly weapon, or the felony of strangulation.

Assault with a deadly weapon, or with force likely to cause great bodily injury, may not

serve as a predicate felony for a finding of felony-murder, under the "merger" doctrine of

---

[1] The Court of Appeal correctly found that this point was not waived by the failure of the defense to object at trial. (Typed op'n., at p. 10, fn. 9.)

10

*People v. Ireland* (1969) 70 Cal.2d 522.

   Contrary to the Court of Appeal's conclusion, the error requires reversal

because at this point, it cannot be determined whether the jury relied on the legally

incorrect felony-murder theory in convicting appellant. In argument, the prosecutor

explicitly informed the jury that both the assault with the bat and the strangulation were

felonies, and further, that appellant's commission of either one of these felonies

conclusively established that the killing was at least second-degree murder, and not

involuntary manslaughter:

> "What is involuntary manslaughter? It's sometimes called misdemeanor
> murder. A human being was killed and the killing was unlawful -- no
> question about that -- during the commission of an unlawful act which did
> not amount to a felony. So in other words, it was a misdemeanor conduct
> and the misdemeanor led to somebody's death. What's a misdemeanor?
> You'll be instructed on battery to that end. Force and violence was used
> and the use was willful. An application of force. It doesn't need to cause
> pain; it doesn't need to leave a mark. You may only hurt the feelings of the
> person. Any touching, if rude or angry or insolent, is enough. So if you
> walk up to a person and you don't like them and you push them and they
> fall and they hit their head, that's involuntary manslaughter.
>
> There is an instruction that talks about the difference between involuntary
> and murder. Murder and manslaughter distinguished. You look at the
> nature of the act. *Was it a misdemeanor or was it a felonious act? If a
> person causes another's death while committing a felony which is
> dangerous to human life, it's murder.* If a person causes another's death
> while committing a misdemeanor which is dangerous to human life under
> the circumstances of its commission, the crime is involuntary manslaughter.
>
> In order to find involuntary manslaughter, ladies and gentlemen, you would
> have to find that strangulation is a misdemeanor. You would also have to
> find that taking a bat to someone's head is a misdemeanor. Is a battery. Is a
> rude touching. *When the force used rises to the level of felony force, malice*

11

*is implied. And when you imply malice because of the level of the force, you get implied-malice second-degree murder. That's the difference.*

So let's say you called using a bat on a human being a misdemeanor. There's an argument that it's not, given what a battery is, any rude touching, but let's say that your using a bat can be a misdemeanor. If you hit somebody on the foot, that could be, in theory, a misdemeanor. You hit somebody on the foot, a blood clot forms, and the next thing you know, the person's dying. *When you hit somebody in the head with a baseball bat, that's a felony. That's felonious conduct and malice should be implied. When you strangle somebody, there's no misdemeanor version of that, it's strangulation. It's a lethal force. That is felonious conduct. You should imply malice. That's not a misdemeanor, that's not a rude touching. That's why this case is not an involuntary manslaughter.*

That takes us to your final finding. You will be asked on each of the instructions on each of your verdict forms to make a finding whether the defendant personally used a dangerous or deadly weapon, in this case a baseball bat. I would respectfully suggest the finding to that should be true, because he did. *And to that same end, ladies and gentlemen, because the use of the bat is true, I would suggest to you that this is, at a minimum, at the very least, a second-degree murder under implied malice.*"

(RT 9, 1042-1044.)

In her rebuttal argument, the prosecutor returned to this theme, stating:

"*Because this is not a misdemeanor, because this is not a punch or a slap, this is not involuntary manslaughter.* And if it's not involuntary manslaughter, because there is no defense to what he did, there is no defense to having killed another human being, it is either second-degree murder or first degree murder. And that, ladies and gentlemen, is the only area in which you need to consider whether or not there is reasonable doubt. Is there a reason to doubt based on the evidence and the facts? Is there a reason to doubt whether he premeditated and deliberated? If there is a reason to doubt whether he premeditated and deliberated, then it's a second-degree murder. There is no doubt that he knew that this was lethal force. *This is a felony act. Malice is implied. That's murder.*

(RT 10, 1109.)

12

In light of this argument, and in view of the court's instructions, one or more reasonable jurors may well have concluded that appellant was guilty of second-degree murder, on the understanding that the felonious assault with the bat, or the felonious strangulation, required such a conclusion under California law, and that no proof of actual malice was necessary.

In *People v. Smith* (1984) 35 Cal.3d 798, this Court reversed the defendant's murder conviction because the People could not show that no juror relied on the erroneous theory in finding the defendant guilty, citing *People v. Green* (1980) 27 Cal.3d 1, 73-74 and *People v. Henderson* (1977) 19 Cal.3d 86, 96. (*Id.*, 35 Cal.3d at p. 808.) In *People v. Guiton* (1993) 4 Cal.4th 1116, this Court reiterated that, when a criminal case is submitted to the jury on two alternative legal theories, one of which is legally correct and the other incorrect, and the appellate court cannot determine whether the jury relied on the legally correct theory, reversal is required. The Court of Appeal has erred by applying harmless error analysis rather than applying the rule of *Smith, Green, Henderson,* and *Guiton.*

Reversal is also compelled by the United States Constitution, because any other conclusion would violate the due process and jury trial provisions of the Fifth, Sixth, and Fourteenth Amendments, which guarantee that persons charged with crimes may only be convicted if a jury has found that every element of the charged crime has been proved beyond a reasonable doubt. (U.S. Const., amends. V, VI, XIV; *Sullivan v.*

13

*Louisiana* (1993) 508 U.S. 275; *In re Winship* (1970) 397 U.S. 358.) Here, due to the

trial court's erroneous instruction on the second-degree felony-murder rule, and the

prosecution's argument, encouraging the jury to convict on a theory of felony-murder, it

cannot be said that appellant's jury found he acted with actual malice in killing Helen

Soto. Accordingly, his conviction must be reversed.

III

## CALJIC NO. 2.03 VIOLATES THE FEDERAL CONSTITUTION'S GUARANTEE OF IMPARTIALITY BETWEEN DEFENSE AND PROSECUTION

The trial court instructed appellant's jury, in the language of CALJIC No.

2.03. (RT 9, 1000.) Appellant submits here that the giving of this instruction was error,

and violated his federal Constitutional rights to impartiality as between prosecution and

defense in the matter of jury instructions.[2]

Jury instructions that lessen the prosecution's burden of proof or shift that

burden to the defendant violate the defendant's Sixth Amendment right to a jury trial and

his Fourteenth Amendment right to due process of law. (*Yates v. Evatt* (1991) 500 U.S.

391; *Martinez v. Borg* (9th Cir. 1991) 937 F.2d 422, 423; *Miller v. Norvell* (11th Cir.

1985) 775 F.2d 1572 [instruction that proof of a specified fact shall constitute prima facie

evidence of intent created an unconstitutional mandatory rebuttable presumption].)

It is true that this Court has approved such instructions as CALJIC No.

2.03, which is commonly requested by the prosecution to benefit the prosecution by

directing the jury's attention to particular pieces of evidence which may support the

prosecution's arguments to the jury. (See, e.g., *People v. Kelly* (1992) 1 Cal.4th 495,

531-532, [CALJIC No. 2.03]; see, *People v. Bradford* (1997) 14 Cal.4th 1005, 1055

[CALJIC No. 2.52.) However, to appellant it seems anomalous and unfair that the Court

---

[2] Appellant objected that the evidence did not support this instruction. (RT 8, 952.)

15

reaches this conclusion while holding, in other cases, that criminal defendants are not
entitled to such instructions to point the jury to evidence which supports the defense
arguments, ruling that when requested by the defense they are improper "pinpoint"
instructions and "unduly argumentative." (E.g., *People v. Wright* (1988) 45 Cal.3d 1126;
*People v. Harris* (1989) 47 Cal.3d 1047, 1098, fn. 31; *People v. Earp* (1999) 20 Cal.4th
826, 886.)

To satisfy fundamental fairness concerns of the United States Constitution,
"[t]here should be absolute impartiality as between the People and the defendant in the
matter of instructions. . . ." (*People v. Moore* (1954) 43 Cal.2d 517, 526-527; *Reagan v.
United States* (1895) 157 U.S. 301, 310; see *Wardius v. Oregon* (1973) 412 U.S. 470
[state trial rules which provide nonreciprocal benefits to the State when the lack of
reciprocity interferes with the defendant's ability to secure a fair trial violate the
defendant's Fourteenth Amendment right to due process of law]; see also *Washington v.
Texas* (1967) 388 U.S. 14, 22; *Gideon v. Wainwright* (1963) 372 U.S. 335; *Izazaga v.
Superior Court* (1991) 54 Cal.3d 356, 372-377; cf. Goldstein, *The State and the Accused:
Balance of Advantage in Criminal Procedure*, 69 Yale L.J. 1149, 1180-1192 (1960).)

Appellant submits that CALJIC No. 2.03, as given at the prosecution's
request in this case, was improper under *Wright*, *Harris*, and *Earp*. It pointed to a
specific piece of evidence -- appellant's pretrial statements to police -- and told the jury
that this evidence could show "consciousness of guilt." Under the reasoning of *Wright*

16

and *Harris*, and the authorities cited therein, the instruction was therefore improperly argumentative, and the trial court erred by granting the prosecution's request for it.

The erroneous instruction improperly tended to lighten the prosecution's burden of proof by placing the trial court's imprimatur on matters that should have simply been the subject of prosecutorial argument. The federal Constitutional rights to a fair trial by jury and to due process of law (Fifth, Sixth, and Fourteenth Amendments) require that the prosecution bear the burden of proving the defendant guilty beyond a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358; see also *Speiser v. Randall* (1958) 357 U.S. 513.) " . . . [T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship, supra*, 397 U.S. at p. 364.)

The error requires reversal of appellant's conviction unless the prosecution can show that it did not contribute to the verdict. (*Chapman v. California* (1967) 386 U.S. 18, 24 (1967). Appellant submits that the prosecution cannot make such a showing in this case. As appellant demonstrated in Argument I, above, the jury evidently found the case to be a close and difficult. In addition, the "consciousness of guilt" instruction was rendered prejudicial because the prosecutor argued appellant's alleged lack of credibility to the jury, stating, " . . . he has a motive to lie . . . . he understands what's going on and he's deciding what he is going to tell the police." (RT 9, 1031.)

17

## CONCLUSION

For all of the reasons shown above, a grant of review is appropriate in this case. Appellant would add, in closing, that the errors shown above should be considered cumulatively, not singly. (See, e.g., *People v. Hill* (1998) 17 Cal.4th 800, 847 [sheer number of legal errors raises strong possibility the aggregate prejudicial effect of such errors was greater than the sum of the the prejudice of each error standing alone; put another way, multiple errors "created a negative synergistic effect, rendering the degree of overall unfairness to defendant more than that flowing from the sum of the individual errors."]; accord, *Dubria v. Smith* (9th Cir. 1999) 197 F.3d 390; *Turner v. Duncan* (9th Cir. 1998) 158 F.3d 449; *Gonzales v. McKune* (10th Cir. 2001) 247 F.3d 1066 [court must consider the cumulative impact of established errors in light of the totality of the evidence properly presented to the jury].) Accordingly, review should be granted, and appellant's conviction should be reversed.

DATED: March 16, 2007

Respectfully submitted,

PHILIP M. BROOKS
Attorney for appellant

18

## CERTIFICATE

I hereby certify that the foregoing brief contains 4393 words, not counting covers, indices, table of authorities, proof of service, appendices, or this certificate, as determined by my word processing program.

DATED: March 16, 2007.

_____
PHILIP M. BROOKS

APPENDIX

(COURT OF APPEAL OPINION)

2007 Cal. App. Unpub. LEXIS 1135, *

THE PEOPLE, Plaintiff and Respondent, v. JOSE LENIN ROMERO, Defendant and Appellant.

A111740

COURT OF APPEAL OF CALIFORNIA, FIRST APPELLATE DISTRICT, DIVISION FOUR

2007 Cal. App. Unpub. LEXIS 1135

February 14, 2007, Filed

NOTICE: [*1] NOT TO BE PUBLISHED IN OFFICIAL REPORTS. CALIFORNIA RULES OF COURT, RULE 8.1115(a), PROHIBIT COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY RULE 8.1115(B). THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF RULE 8.1115.

PRIOR HISTORY: San Francisco County Super. Ct. No. 189270.

CORE TERMS: degree murder, felony murder, harmless, felony, apartment, voluntary manslaughter, woman's, prosecutor's, provocation, provocative, murder, manslaughter instruction, lesser, malice, guilt, heat of passion, involuntary manslaughter, instruct, convicted, homicide, passion, assault, weapon, passageway, uncle, murder conviction, false statements, reasonable probability, human life, deliberation

JUDGES: Ruvolo, P.J.; Sepulveda, J., Rivera, J. concurred.

OPINION BY: Ruvolo

OPINION

Appellant was convicted of second degree murder. On appeal, he contends that the trial court erred in (1) declining to instruct the jury on voluntary manslaughter; (2) making references to felony murder in the jury instructions, and (3) instructing the jury that it could consider appellant's initial false statements to the police as evidence of consciousness of guilt. We find the first and second asserted errors to have been harmless, and reject appellant's claim of error as to the third. Accordingly, we affirm.

I. Facts and Procedural Background

Appellant confessed to committing the homicide with which he was charged. His confessions

2007 Cal. App. Unpub. LEXIS 1135, *

THE PEOPLE, Plaintiff and Respondent, v. JOSE LENIN ROMERO, Defendant and Appellant.

A111740

COURT OF APPEAL OF CALIFORNIA, FIRST APPELLATE DISTRICT, DIVISION FOUR

2007 Cal. App. Unpub. LEXIS 1135

February 14, 2007, Filed

NOTICE: [*1] NOT TO BE PUBLISHED IN OFFICIAL REPORTS. CALIFORNIA RULES OF COURT, RULE 8.1115(a), PROHIBIT COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY RULE 8.1115(B). THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF RULE 8.1115.

PRIOR HISTORY: San Francisco County Super. Ct. No. 189270.

CORE TERMS: degree murder, felony murder, harmless, felony, apartment, voluntary manslaughter, woman's, prosecutor's, provocation, provocative, murder, manslaughter instruction, lesser, malice, guilt, heat of passion, involuntary manslaughter, instruct, convicted, homicide, passion, assault, weapon, passageway, uncle, murder conviction, false statements, reasonable probability, human life, deliberation

JUDGES: Ruvolo, P.J.; Sepulveda, J., Rivera, J. concurred.

OPINION BY: Ruvolo

OPINION

Appellant was convicted of second degree murder. On appeal, he contends that the trial court erred in (1) declining to instruct the jury on voluntary manslaughter; (2) making references to felony murder in the jury instructions, and (3) instructing the jury that it could consider appellant's initial false statements to the police as evidence of consciousness of guilt. We find the first and second asserted errors to have been harmless, and reject appellant's claim of error as to the third. Accordingly, we affirm.

I. Facts and Procedural Background

Appellant confessed to committing the homicide with which he was charged. His confessions

were admitted in evidence at trial, and were generally consistent with the forensic evidence. Accordingly, [*2] our narrative of the events surrounding the crime is drawn largely from appellant's own account.

In February 2003, 1 appellant was living in an apartment in the Mission District of San Francisco with his grandmother and his uncle. During the weekend that began on Friday, February 14, appellant's grandmother went away overnight for a family birthday. Before leaving, she repeated an earlier admonishment she had given appellant to the effect that she did not want him to bring women to the apartment while she was away.

FOOTNOTES

1 All further references to dates are to the year 2003 unless otherwise indicated.

On Saturday, February 15, appellant and his uncle each left the apartment separately to go out for the evening. Appellant spent the evening drinking at two local bars, where he consumed a total of about 18 beers. As he returned to the apartment, he was accosted by a woman who asked if he had any drugs. When he told her he had none, she responded by offering him her services as a prostitute for $ 20. After verifying [*3] that no one was home, appellant took the woman into his apartment, where they ingested some cocaine (both in crack and powder form) that she provided, and then had sex.

After these activities concluded, the woman asked appellant for a cigarette, and he went out to buy some. When appellant returned, he noticed that the $ 140 in cash that he had left on a table was missing. The woman denied taking the money. Appellant became angry, and choked the woman with his hands, breaking one of her necklaces.

Appellant then asked the woman to leave the apartment, because he was afraid his uncle would return and find that he had violated his grandmother's rules. The woman refused to do so, saying that she wanted to spend the night because it was raining. When she persisted in refusing to leave despite appellant's repeated demands, he picked up a metal baseball bat and hit her in the head twice, knocking her unconscious. He then half-carried, half-dragged her down the stairs leading from the back of his apartment to the rear yard, dropping her and bumping her head in the process.

Appellant left the woman, still breathing but unconscious, in a basement level passageway that ran under his apartment [*4] building from the rear yard to the street. When he went back to check on her an hour later, she was dead. Appellant moved the woman's body farther toward the street end of the passageway, used a hose to wash the blood from the passageway floor, and then returned to his apartment.

The woman's body remained in the passageway until the early morning hours of Monday,

February 17. At that time, appellant dragged it through the door leading from the passageway to the street in front of his building, and left it on the sidewalk.

The presence of the body was reported to the police early in the morning on February 17. During the police officers' investigation of the scene, appellant's uncle gave them permission to come through the apartment to gain access to the rear yard. One of the investigating officers saw a broken bead from the victim's necklace near the door leading to the rear stairs. At that point, appellant and his uncle were detained and questioned regarding the homicide, and then released.

Appellant initially denied any knowledge of the crime. After going to church the next day, however, he contacted the police, through his cousin, and asked to talk to them. He made an initial [*5] audiotaped statement in his apartment, with his cousin assisting as his interpreter, and then made an additional videotaped statement at the police station, interpreted by a bilingual police officer. Transcripts of both statements, with translations by a certified court interpreter, were introduced in evidence at appellant's trial.

The only genuinely disputed factual issue at trial was appellant's state of mind at the time of the killing. In appellant's confessions, he said he became very angry at the victim after she took his money, denied having taken it, and then refused his repeated requests that she leave his apartment. Appellant disavowed any intent to kill the victim, explaining that he assaulted her only because he was angry and wanted her to leave. According to appellant, he hit the victim harder than he intended because he was confused by the alcohol and drugs he had ingested.

Appellant's mother testified to the severe physical and psychological abuse that appellant suffered at the hands of his stepfather when he was a child. Appellant also introduced expert testimony that he suffered from mild mental retardation, impaired impulse control, brain damage, depression, and [*6] post-traumatic stress disorder. A prosecution expert disputed these diagnoses, but acknowledged that appellant was an emotional and impulsive person who had a need for immediate gratification and arrived at decisions without much thought. 2

FOOTNOTES

2 The jury was instructed to consider this evidence only for the purpose of determining whether appellant "actually formed the required specific intent" for first or second degree murder. It is not germane to the issues appellant raises on this appeal.

Appellant was charged with murder (Pen. Code, § 187 3), on a premeditation and deliberation theory, with an enhancement for personal use of a deadly weapon. ( § 12022, subd. (b)(1).) The jury found him not guilty of first degree murder, but convicted him of second degree murder as a lesser included offense, and found the weapon allegation to be true. Appellant was sentenced to 15 years to life, plus a consecutive one-year term for the weapon enhancement. This timely appeal followed.

FOOTNOTES

3 All further statutory references are to the Penal Code unless otherwise noted.


[*7]  II. Discussion

A. Refusal to Instruct Jury on Voluntary Manslaughter

In addition to the lesser included offense of second degree murder, appellant's counsel requested that the jury also be instructed on the lesser included offense of voluntary manslaughter. The trial court refused the request on the ground that it was not supported by sufficient evidence of adequate provocation. The principal issue that appellant raises on appeal is whether this was error.

Except for the felony murder doctrine, 4 a homicide that would otherwise be second degree murder is reduced to voluntary manslaughter when it is provoked by a "sudden quarrel or heat of passion." ( § 192, subd. (a)). For voluntary manslaughter to apply, both provocation and heat of passion must be affirmatively demonstrated by the evidence. (People v. Steele (2002) 27 Cal.4th 1230, 1252.)


FOOTNOTES

4 As discussed in more detail post, this case was not, and could not have been, prosecuted on a felony murder theory.


Under California law, no [*8]  specific type of provocation is required to support a verdict of voluntary manslaughter. (People v. Breverman (1998) 19 Cal.4th 142, 163.) The victim's provocative conduct may be physical or verbal. (People v. Lee (1999) 20 Cal.4th 47, 59.)

"The heat of passion requirement for manslaughter has both an objective and a subjective component. [Citation.] The defendant must actually, subjectively, kill under the heat of passion. [Citation.] But the circumstances giving rise to the heat of passion are also viewed objectively. . . . '[The] heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances,' because 'no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.' [Citation.]" (People v. Steele, supra, 27 Cal.4th at pp. 1252-1253.) In other words, the victim's provocative conduct "must be sufficiently provocative that it would [*9]  cause an ordinary person of average disposition to act

rashly or without due deliberation and reflection. [Citations.]" (People v. Lee, supra, 20 Cal.4th at p. 59.) 5

FOOTNOTES

5 In addition, sufficient time cannot have elapsed since the provocation for the passions of an ordinarily reasonable person to cool. (People v. Kanawyer (2003) 113 Cal.App.4th 1233, 1244-1245.) Respondent does not argue that the trial court's refusal of the instruction in the present case was justified on this basis.

In assessing whether the evidence of provocation in a given case is sufficient to warrant a voluntary manslaughter instruction, trial courts apply the general rule that instructions on lesser included offenses must be given when there is substantial evidence to support them. Substantial evidence is defined, for this purpose, as "evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive. [Citation.]" (People v. Barton (1995) 12 Cal.4th 186, 201, fn. 8.) [*10] "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight. [Citations.]" (People v. Breverman, supra, 19 Cal.4th at p. 177.) The trial court's decision whether or not the substantial evidence test was met is reviewed on appeal under an independent or de novo standard of review. (People v. Waidla (2000) 22 Cal.4th 690, 733; People v. Hayes (2006) 142 Cal. App. 4th 175, 181.)

Because the evidentiary threshold for lesser included offense instructions is relatively low, evidence of provocation may be sufficiently substantial to require a voluntary manslaughter instruction even where the evidence is also sufficient to sustain a second degree murder conviction on appeal. In the leading case of People v. Valentine (1946) 28 Cal.2d 121, for example, the Supreme Court remarked that the evidence "would justify a verdict of voluntary manslaughter but [was] not insufficient to sustain a verdict of second degree murder," and therefore held that the question of the degree of homicide was "one of fact for the jury under proper instructions" on both [*11] offenses. (Id. at p. 144.)

In keeping with this principle, appellant here does not challenge the sufficiency of the evidence to support his second degree murder conviction. Rather, his argument is that the jury should have been offered the option of convicting him of voluntary manslaughter instead, because the victim's provocative conduct-stealing appellant's money, denying that she had done so, and then refusing to leave his apartment-rose to a level "sufficient to arouse the passions of the ordinarily reasonable man" (People v. Steele, supra, 27 Cal.4th at pp. 1252-1253), or, in other words, was "sufficiently provocative [to] cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. [Citations.]" (People v. Lee, supra, 20 Cal.4th at p. 59.)

In support of this point, appellant relies most heavily on People v. Barton, supra, 12 Cal.4th 186. In that case, the Supreme Court held that a voluntary manslaughter instruction was properly given-even over the defendant's objection-where the defendant's version of the events was that, shortly before the killing, [*12] the defendant's daughter told him that the victim had just tried to run her car off the road and spat at her, and then, when the defendant confronted the victim about it, the victim called the daughter a "bitch," assumed a "fighting stance" vis-A -vis the defendant, and attempted to flee the scene. (Id. at pp. 192-193, 202.) Appellant contends that the victim's conduct in the present case was provocative to a similar degree, and that the requested instruction therefore should have been given.

Respondent disagrees, and argues, based on the facts in several other cases, that the provocation here was insufficient to require a voluntary manslaughter instruction. However, only one of these cases, People v. Cole (2004) 33 Cal.4th 1158, actually upheld a trial court's refusal to give such an instruction, and in that case, the victim's conduct was manifestly less provocative than that involved here. 6 Thus, as the trial judge herself implicitly acknowledged, it is a close question in the present case whether a voluntary manslaughter instruction was warranted, at least "out of an abundance of caution." (People v. Steele, supra, 27 Cal.4th at p. 1250.) [*13] We need not resolve the issue, however, because even if it was error to refuse the instruction, that error was harmless.

## FOOTNOTES

6 In People v. Cole, supra, 33 Cal.4th 1158, the Supreme Court held that a voluntary manslaughter instruction was properly refused where the evidence showed that the victim, who was the defendant's girlfriend, had done nothing unusual to provoke the defendant. All she had done was to use harsh and threatening language, in a way that was typical of their relationship, and the evidence showed that she was lying in bed, possibly asleep, when the defendant began his assault on her. (Id. at p. 1216.)

Both parties agree that the Watson standard of harmless error applies to erroneous failure to instruct on a lesser included offense. (People v. Watson (1956) 46 Cal.2d 818, 836 (Watson); see People v. Breverman, supra, 19 Cal.4th at pp. 164-165, 177-178; People v. Hayes, supra, 142 Cal.App.4th at p. 182.) [*14] Appellate review under the Watson standard "focuses not on what a reasonable jury could do, but what such a jury is likely to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result." (People v. Breverman, supra, 19 Cal.4th at p. 177.)

"There is a reasonable probability of a more favorable result within the meaning of Watson when there exists 'at least such an equal balance of reasonable probabilities as to leave the court in

serious doubt as to whether the error affected the result.' " (People v. Mower (2002) 28 Cal.4th 457, 484, quoting from Watson, supra, 46 Cal.2d at p. 837.) Our review of the record leaves us without any such "serious doubt." The victim's conduct here was provocative to some degree, but we do not believe a reasonable jury would have found that the [*15] provocation rose to such a level as to "cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. [Citations.]" (People v. Lee, supra, 20 Cal.4th at p. 59.) Thus, on the facts of this case, there is no reasonable probability that the jury would have convicted appellant of voluntary manslaughter rather than second degree murder, if that option had been offered to it. Accordingly, even if it was error for the trial court to refuse appellant's request for a voluntary manslaughter instruction, such error was harmless.

B. References to Felony Murder in Instructions and Closing Argument

It is undisputed that appellant could not properly have been convicted of felony murder in this case. 7 Nonetheless, both the trial court's jury instructions and the prosecutor's closing argument mentioned the concept of felony murder, in the context of distinguishing between murder and the lesser included offense of involuntary manslaughter. 8

FOOTNOTES

7 The only felonious behavior on appellant's part of which there was any evidence was his assaults on the victim. As respondent acknowledges, because these assaults were the same conduct that resulted in the homicide, the merger doctrine precluded them from being used as the predicate for a felony murder conviction. (People v. Hansen (1994) 9 Cal.4th 300, 312-314; People v. Ireland (1969) 70 Cal.2d 522, 75 Cal. Rptr. 188.) [*16]

8 Although the trial court declined to instruct the jury on voluntary manslaughter, it did instruct on involuntary manslaughter.

The instructions on involuntary manslaughter made clear that the elements of this crime include the requirement that the killing have resulted from a misdemeanor-in this case, a battery-rather than a felony. After defining battery, however, the instructions went on to explain, in language taken from CALJIC No. 8.51, that "If the person causes another['s] death while committing a felony which is dangerous to human life, the crime is murder. If a person causes another['s] death while committing a misdemeanor which is dangerous to human life under the circumstances of its commission, the crime is involuntary manslaughter." (Italics added.) Appellant contends that this instruction should have been omitted.

Appellant further contends that the error was compounded by portions of the prosecutor's closing argument. Specifically, in arguing that appellant's crime could not be characterized as involuntary manslaughter because appellant's [*17] assault was a felony rather than a misdemeanor, the prosecutor repeated the sentence from CALJIC No. 8.51 quoted ante, and

added that, "When the force used rises to the level of felony force, malice is implied. And when you imply malice because of the level of the force, you get implied-malice second-degree [sic] murder." Then, after arguing that the jury should return a true finding on the deadly weapon enhancement, the prosecutor reiterated that "because the use of the bat is true, I would suggest to you that this is, at a minimum, at the very least, a second-degree [sic] murder under implied malice." Finally, in her rebuttal, the prosecutor again argued that the crime had to be murder rather than involuntary manslaughter because "There is not doubt that he knew that this was lethal force. This is a felony act. Malice is implied. That's murder."

Appellant argues that these references to felony murder may have misled the jury into convicting him of second degree murder on a felony murder theory rather than on the basis of implied malice. 9 Appellant further contends, based on People v. Satchell, supra, 6 Cal.3d 28, 41, [*18] and People v. Smith (1984) 35 Cal.3d 798, 808, 201 Cal. Rptr. 311, that the error requires reversal because the record does not affirmatively demonstrate that the jury did not rely on a felony murder theory.

## FOOTNOTES

9 Appellant's trial counsel did not object either to the inappropriate jury instruction or to the portions of the prosecution's argument of which he now complains. Nonetheless, respondent concedes, with commendable candor, that the issue was not waived. ( § 1259; see People v. Satchell (1971) 6 Cal.3d 28, 33, fn. 10, 98 Cal. Rptr. 33, overruled on another ground in People v. Flood (1998) 18 Cal.4th 470, 484, 490, fn. 12.)

Respondent concedes that the felony murder instruction was given in error, but argues that under Neder v. United States (1999) 527 U.S. 1, 18, 144 L. Ed. 2d 35, the conviction need not be reversed if we find that the error was harmless beyond a reasonable doubt, under the standard articulated in Chapman v. California (1967) 386 U.S. 18, 17 L. Ed. 2d 705 [*19] (Chapman). Respondent further contends that the error was in fact harmless, under that standard, when analyzed in the context of the instructions as a whole. (See People v. Martin (2000) 78 Cal.App.4th 1107, 1111.)

We agree with respondent that the Chapman standard applies. This is not a case in which the jury was expressly instructed that it could find appellant guilty on a legally inapplicable theory, or in which the jury was not instructed on an essential element of the crime. Rather, this is a case in which the jury was properly instructed on all of the elements of first or second degree murder, but in addition, the trial court made an erroneous passing reference to felony murder. This is akin to the type of confusion or conflict in the instructions which has been held to be subject to the Chapman harmless error analysis in cases such as People v. Landry (1989) 212 Cal. App. 3d 1428, 1439-1440, 261 Cal. Rptr. 254.

As our Supreme Court put it in People v. Flood, supra, 18 Cal.4th at pp. 502-503, criticized on

another ground in People v. McCall (2004) 32 Cal.4th 175, 187, fn. 14, "an instructional [*20] error that improperly describes or omits an element of an offense, or that raises an improper presumption or directs a finding or a partial verdict upon a particular element, generally is not a structural defect in the trial mechanism that defies harmless error review and automatically requires reversal under the federal Constitution. Indeed, the high court never has held that an erroneous instruction affecting a single element of a crime will amount to structural error [citation], and the court's most recent decisions suggest that such an error, like the vast majority of other constitutional errors, falls within the broad category of trial error subject to Chapman review." (See also People v. Guiton (1993) 4 Cal.4th 1116, 1130-1131 [error stemming from instruction on two theories of an offense, one correct and the other legally incorrect, may be found to be harmless where verdict necessarily shows jury found guilt on proper theory, and possibly in "additional ways . . . ."].)

We further agree with respondent that the error was harmless under the Chapman standard. The instructions expressly informed the jury that, in order to find appellant guilty of second [*21] degree murder, it had to find either that appellant had the intent to kill or, in the absence of such an intent, that "one, the killing resulted [from] an intentional act; two, the natural consequences of the act are dangerous to human life; and three, the act was deliberately performed with knowledge of the danger to and with conscious disregard for human life." Appellant does not challenge the correctness or completeness of this instruction in and of itself, but relies only on the trial court's having made a passing reference to felony murder, in an isolated sentence and in a different context. In addition, even in this context, the court defined battery as a misdemeanor, not a felony, and did not mention any other crime appellant might have committed that the jury could have interpreted as the predicate for felony murder.

Nonetheless, appellant speculates that because "[a]ssault with a deadly weapon is a commonly-known felony," and the prosecutor's argument characterized appellant's use of the baseball bat as a felonious assault, the jury might have supplied it as the predicate felony for a felony murder conviction, and thus convicted appellant without finding the requisite [*22] malice. This argument overlooks the fact that, with the exception of the isolated reference of which appellant complains, the jury was never even told of the existence of the felony-murder rule, much less instructed that it could convict appellant on that basis. Thus, in order to find the error harmful, we would have to assume that the jury not only found that appellant had committed a predicate felony, in the absence of any instructions on that subject, but that it also disregarded the trial court's explicit instructions regarding the requisite intent for second degree murder, choosing instead to base its verdict on erroneous references to felony murder embedded in the prosecutor's closing argument.

This is not the law. In analyzing a claim of error based on misstatements of law by the prosecutor during closing argument, "we presume that the jury relied on the instructions, not the arguments, in convicting defendant. '[I]t should be noted that the jury, of course, could totally disregard all the arguments of counsel.' [Citation.] . . . [O]ur presumption [is] that 'the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken [*23] by an advocate in an attempt to persuade.' [Citation.]" (People v. Morales (2001) 25 Cal.4th 34, 47.)

Moreover, there is ample evidence in the record supporting appellant's conviction of second degree murder on an implied malice theory, based on the conscious disregard for life that is evident from appellant's course of conduct in hitting the victim's head twice with a metal baseball bat, and then abandoning her in a bleeding and unconscious state. For all of the foregoing reasons, we can only conclude that the erroneous references to felony murder in the instructions and the closing argument were harmless beyond a reasonable doubt.

C. Instruction on False or Misleading Statement

Over appellant's objection, the trial court instructed the jury that "If you find that before this trial the defendant made a willfully false or deliberately misleading statement concerning the crime for which he is now being tried, you may consider that statement as a circumstance tending to prove consciousness of guilt. However, that conduct by itself is not sufficient to prove guilt. And its weight and significance, if any, are for you to decide." (CALJIC No. 2.03. [*24] )

Appellant contends that giving this instruction was error, because it improperly pinpointed one piece of evidence in the prosecution's case, and tended to lighten the prosecution's burden of proof. He acknowledges, however, that the California Supreme Court has rejected his position. (People v. Kelly (1992) 1 Cal.4th 495, 531-532.) We are, of course, bound by the high court's decision. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal. Rptr. 321.)

In any event, even if the instruction had been given in error, any such error was harmless beyond a reasonable doubt. 10 Given the admission into evidence of appellant's unequivocal confessions, coupled with the forensic evidence corroborating appellant's guilt, there is simply no possibility that the jury's decision to convict him of second degree murder was based on, or even influenced by, an inference of guilty conscience based on his initial false statements.

FOOTNOTES

10 At worst, the instruction may have been superfluous. In appellant's detailed confessions, he unequivocally retracted his earlier statement falsely denying guilt. Thus, the inference permitted by the instruction-i.e., that appellant's initial false statement "tend[ed] to prove consciousness of guilt"-added little, if anything, to the overwhelming direct and circumstantial evidence that appellant killed the victim.

[*25] In closing, appellant argues that even if the errors he asserts on appeal are found to have been individually harmless, their cumulative effect warrants reversal. We reject this argument for two reasons. First, we have not determined that the failure to instruct on voluntary manslaughter was error, and appellant concedes that the false statement instruction was permissible under California law. Second, we are reluctant to apply a cumulative error analysis in the absence of a "strong possibility [that] the aggregate prejudicial effect of [the asserted]

errors was greater than the sum of the prejudice of each error standing alone. [Citation.]" (People v. Hill (1998) 17 Cal.4th 800, 845.) Where, as here, we are faced with at most two instructional errors, which bear no logical relationship to one another, there is no basis for us to conclude that the asserted errors, taken together, could have had any cumulative prejudicial impact beyond that of each one individually.

III. Disposition

The judgment is affirmed.

Ruvolo, P.J.

We concur:

Sepulveda, J.

Rivera, J.

Philip M. Brooks, Atty at Law
1442-A Walnut St., #233
Berkeley, CA 94709

People v. Jose Romero
Case No. A111740 (SF.Cty. No. 189270)

## DECLARATION OF SERVICE

I, Philip M. Brooks, say: I am over 18 years of age, employed in the County of Alameda, California, in which county the within-mentioned delivery occurred, and not a party to the subject cause. My business address is 1442-A Walnut St., #233, Berkeley, California. I served appellant's PETITION FOR REVIEW, of which a true and correct copy is affixed, by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed as follows:

Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94105-2239

First District Appellate Project
730 Harrison St., Suite 201
San Francisco, CA 94107

Office of the District Attorney
850 Bryant Street
San Francisco, CA 94103

Clerk, Superior court
Hall of Justice, 850 Bryant St., Rm 201
San Francisco, CA 94103

Gregory Feldman, Attorney at Law
Office of the Public Defender
258A Laguna Honda Blvd.
San Francisco, CA 94116

Jose Romero (appellant)

Clerk, California Court of Appeal, 1st Dist., Div. 4
350 McAllister Street
San Francisco, CA 94102

I then sealed each envelope and deposited it in the United States mail, with the postage thereon fully prepaid, at Berkeley, California, on March 16, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 16, 2007, at Berkeley, California

---

Philip M. Brooks

COPY

Philip M. Brooks
Attorney at Law, State Bar No. 46237
1442-A Walnut St., #233
Berkeley, CA 94709
Telephone/FAX (510) 528-7996
email: philipmbrooks@gmail.com

March 27, 2007

To the Honorable Ronald George, Chief Justice
and the Honorable Associate Justices
Supreme Court of the State of California
350 McAllister Street
San Francisco, CA 94102

> Re: *People v. Jose Romero*, No. S151070
> (Court of Appeal No. A111740)

To the Honorable Chief Justice and Associate Justices:

Petitioner seeks leave to file this supplemental letter containing points and authorities relevant to the Petition for Review filed by petitioner on March 20, 2007.

In the petition, he argued that the Court of Appeal was wrong to conclude that, under the standard of *People v. Breverman* (1998) 19 Cal.4th 142, 164-165, 177-178, it need not decide whether the trial court erred in refusing to instruct on voluntary manslaughter, because any error was harmless. (Typed op'n., at p. 7, citing *Breverman* and *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The point that petitioner did not raise in the petition, and that he now seeks to add by means of this supplemental letter, is that the instructional error in his case is federal Constitutional error, and thus should be analyzed under the standard of *Chapman v. California* (1967) 386 U.S. 18, 24, rather than *Watson*. Petitioner submits that this is so for the reasons stated by Justice Kennard in her dissent in *Breverman*, where she took the position that, because of the "unique relationship between murder and voluntary manslaughter," a failure to instruct on voluntary manslaughter is a failure to instruct on the elements of malice, and thus, a federal Constitutional violation. (*Breverman, supra,*

1

19 Cal.4th at pp. 187-188, 190-191, 194 [dis. op'n. of Kennard, J.].)[1]

The "unique relationship" between murder and voluntary manslaughter alluded to by Justice Kennard in her *Breverman* dissent is that, while voluntary manslaughter is commonly viewed as a lesser offense included within murder, voluntary manslaughter based on heat of passion actually has all of the elements of murder, with the additional element of heat of passion. Under these circumstances, reasons Justice Kennard, heat of passion manslaughter would more accurately be called a "lesser *including* offense." (*Id.*, at p. 189, fn. 4 [emphasis in original].) If the additional element of heat of passion is present, malice is negated. Thus, the failure to instruct on heat of passion constitutes a failure to fully instruct on malice. (*Id.*, at p. 190.) Because instructions that omit or

[1] Petitioner did not raise this issue in the Court of Appeal, but it would have been futile to do so, because the Court of Appeal would almost certainly have concluded that it was bound to follow the majority opinion in *Breverman*, rather than Justice Kennard's dissenting opinion. This is so because of the all-encompassing language used by the majority in *Breverman* -- a case, like petitioner's, involving assertions of error in manslaughter instructions:

"Accordingly, we conclude that in a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence *must be reviewed for prejudice exclusively under Watson.* A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred (*Watson, supra,* 46 Cal. 2d 818, 836)."

(*Breverman, supra,* 19 Cal.4th at p. 178 [emphasis added]; see, *id.*, at p. 193 [dis. op'n. of Kennard, J.] [parties need not have argued a point in the Court of Appeal to preserve it for review if clearly-established state law would have made it pointless to do so]. Where it would have been futile for the appellant to raise a point in the Court of Appeal, this Court has previously found it appropriate to consider the point for the first time on grant of review. (See, e.g., *People v. Black* (2005) 35 Cal.4th 1238, 1246 [Court grants review to consider validity of Determinate Sentencing Law in light of *Blakely v. Washington* (2004) 542 U.S. 296; see, *People v. Black* (June 1, 2004) F042592 [unpub. op'n][sentencing issue considered in *People v. Black, supra,* 35 Cal.4th 1238, not raised in, or considered by, Court of Appeal.][Petitioner cites the unpublished opinion only to show that the *Blakely* issues briefed for the Supreme Court on grant of review were not raised or considered in the Court of Appeal].)

2

misdescribe an element of a crime are constitutionally defective, the error is of federal Constitutional dimension. (*Id.*, citing *United States v. Gaudin* (1995) 515 U.S. 506.)

Furthermore, as observed by Justice Kennard in her *Breverman* dissent (*id.*, 19 Cal.4th at p. 190), due process requires fundamental fairness in the criminal procedures by which a defendant is convicted of a crime. (*United States v. Valenzuela-Bernal* (1982) 458 U.S. 858, 872 ["Due process guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice.'"]; *Spencer v. Texas* (1967) 385 U.S. 554, 563-564 ["the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial"]; *People v. Quartermain* (1997) 16 Cal. 4th 600, 618.) In particular, due process "ensure[s] fundamental fairness in the determination of guilt at trial." (*Albright v. Oliver* (1994) 510 U.S. 266, 283 [conc. opn. of Kennedy, J.].)

A grant of review in this case would afford this Court an opportunity to address the merits of Justice Kennard's analysis. The Court did not address that analysis in *Breverman* because the majority concluded that the issue was not properly before it. (*Breverman, supra,* 19 Cal.4th at p. 170, fn. 19.) The Court again noted the issue, without resolving it, in *People v. Lasko* (2000) 23 Cal. 4th 101, 113. This case would afford an opportunity to address the merits of the issue and clarify that, at least in the case of heat of passion manslaughter, an error in failing to instruct on a lesser offense can constitute federal Constitutional error.

As noted in the Petition for Review, the jury in this case deliberated long and hard before returning a verdict, and in the end convicted petitioner of second-degree murder, rather than the charged crime of first-degree murder. (Pet'n., at pp. 7-9.) If the effect of the trial court's refusal to instruct on heat of passion manslaughter is evaluated under federal Constitutional standards, reversal of his conviction is clearly indicated.

Petitioner therefore requests that his supplemental letter brief be filed; and, for the reasons stated in his Petition for Review, as well as for the additional reasons stated in this supplemental letter, petitioner requests that review be granted.

Respectfully submitted,

Philip M. Brooks
Attorney for Petitioner

3

Philip M. Brooks, Atty at Law
1442-A Walnut St., #233          People v. Jose Romero
Berkeley, CA 94709              Case No. A111740 (SF.Cty. No. 189270)

### DECLARATION OF SERVICE

     I, Philip M. Brooks, say: I am over 18 years of age, employed in the County of Alameda, California, in which county the within-mentioned delivery occurred, and not a party to the subject cause. My business address is 1442-A Walnut St., #233, Berkeley, California. I served the supplemental letter brief, of which a true and correct copy is affixed, by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed as follows:

Office of the Attorney General          First District Appellate Project
455 Golden Gate Ave., Suite 11000       730 Harrison St., Suite 201
San Francisco, CA 94105-2239            San Francisco, CA 94107

Office of the District Attorney         Clerk, Superior court
850 Bryant Street                       Hall of Justice, 850 Bryant St., Rm 201
San Francisco, CA 94103                 San Francisco, CA 94103

Gregory Feldman, Attorney at Law        Jose Romero (appellant)
Office of the Public Defender
258A Laguna Honda Blvd.
San Francisco, CA 94116

Clerk, California Court of Appeal, 1st Dist., Div. 4
350 McAllister Street
San Francisco, CA 94102

     I then sealed each envelope and deposited it in the United States mail, with the postage thereon fully prepaid, at Berkeley, California, on March 27, 2007.

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on March 27, 2007, at Berkeley, California

_____
Philip M. Brooks



Court of Appeal, First Appellate District, Div. 4 - No. A111740
**S151070**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

JOSE LENIN ROMERO, Defendant and Appellant.

The petition for review is denied.

SUPREME COURT
# FILED

MAY – **9** 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

TO THE HONORABLE COURT + WHOMEVER
THIS MAY CONCERN,

I, JOSE L. ROMERO, AM ADDRESSING
THE COURT IN REFERENCE TO MY CASE:
( SAN FRANCISCO CO. NO. A 111740 + COURT OF APPEAL
NO. 189270 ). I'M SEEKING TO FILE A PETITION
OF WRIT IN FORMA PAUPERIS + ALSO SEEKING
FEDERAL RELIEF IN MY CASE. I AM
CURRENTLY IN CUSTODY, + AM AN INDIGENT
INMATE. I KNOW VERY LITTLE, IF ANYTHING,
OF THE US. LAW, + AM IN DIRE NEED OF
LEGAL ASSISTANCE + REPRESENTATION.
I HUMBLY ASK THAT YOU GRANT + APPOINT
ME REPRESENTATION IN MY CASE. A
FEDERAL U.S. DISTRICT APPOINTED ATTORNEY
WOULD BE HIGHLY APPRECIATED. THANK YOU
VERY MUCH FOR YOUR TIME + ATTENTION
IN THIS MATTER.

RESPECTFULLY YOURS,
JOSE L. ROMERO
# V91683



RECEIVED

MAR 10 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Jose Lenin Romero. V-91685
P.O. Box-8502- B-5-106-/
Coalinga. California.
-93210-

LEGAL MAIL

U.S. POSTAGE PAID
COALINGA, CA
COALINGA 210.08
93210
MFG AMOUNT
$0.00
0006549901

- CLERK of The United
District Court -

Northern District of California
450 Golden Gate Avenue, Box
San Francisco, Ca. 94102

THIS MAIL GENERATED FROM
PLEASANT VALLEY STATE PRISON

Pro Se

LEGAL MAIL

RECEIVED

MAR 1 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

~ CLERK OF THE UNITED STATES
DISTRICT COURT ~

NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVENUE, BOX 36060
SAN FRANCISCO, CA. 94102

- 93210 -

GENERATED FROM
VALLEY STATE PRISON