UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LENIN ROMERO,<br><br>Petitioner,<br><br>v.<br><br>JAMES A. YATES, Warden,<br><br>Respondent. | No. C 08-1385 MHP (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

**BACKGROUND**

In 2005, a San Francisco County Superior Court jury found Petitioner guilty of second degree murder, and found true an allegation that Petitioner personally used a deadly weapon.[1] The trial court sentenced Petitioner to fifteen years to life, plus a consecutive one-year term for the deadly weapon enhancement. The California Court of Appeal for the First Appellate District affirmed the judgment, see Ans., Ex. 3 at 1, and the California Supreme Court denied his petition for review, see id., Ex. 6. It appears Petitioner did not seek state habeas relief.

Evidence presented at trial showed that in 2003 Petitioner beat a female prostitute to death with a baseball bat. The state appellate court summarized the facts as follows:

In February 2003, [Petitioner] was living in an apartment in the Mission District of San Francisco with his grandmother and his uncle. During the weekend that began on Friday, February 14, [Petitioner's] grandmother went away overnight for a family birthday. Before leaving, she repeated an earlier admonishment she had given [Petitioner] to the effect that she did not want him to bring women to the apartment while she was away.

On Saturday, February 15, [Petitioner] and his uncle each left the apartment separately to go out for the evening. [Petitioner] spent the evening drinking at two local bars, where he consumed a total of about 18 beers. As he returned to the apartment, he was accosted by a woman who asked if he had any drugs. When he told her he had none, she responded by offering him her services as a prostitute for $20. After verifying that no one was home, [Petitioner] took the woman into his apartment, where they ingested some cocaine (both in crack and powder form) that she provided, and then had sex.

After these activities concluded, the woman asked [Petitioner] for a cigarette, and he went out to buy some. When [Petitioner] returned, he noticed that the $140 in cash that he had left on a table was missing. The woman denied taking the money. [Petitioner] became angry, and choked the woman with his hands, breaking one of her necklaces.

[Petitioner] then asked the woman to leave the apartment, because he was afraid his uncle would return and find that he had violated his grandmother's rules. The woman refused to do so, saying that she wanted to spend the night because it was raining. When she persisted in refusing to leave despite [Petitioner]'s repeated demands, he picked up a metal baseball bat and hit her in the head twice, knocking her unconscious. He then half-carried, half-dragged her down the stairs leading from the back of his apartment to the rear yard, dropping her and bumping her head in the process.

[Petitioner] left the woman, still breathing but unconscious, in a basement level passageway that ran under his apartment building from the rear yard to the street. When he went back to check on her an hour later, she was dead. [Petitioner] moved the woman's body farther toward the street end of the passageway, used a hose to wash the blood from the passageway floor, and then returned to his apartment.

The woman's body remained in the passageway until the early morning hours of Monday, February 17. At that time, [Petitioner] dragged it through the door leading from the passageway to the street in front of his building, and left it on the sidewalk.

The presence of the body was reported to the police early in the morning on February 17. During the police officers' investigation of the scene, [Petitioner]'s uncle gave them permission to come through the apartment to gain access to the rear yard. One of the investigating officers saw a broken bead from the victim's necklace near the door leading to the rear stairs. At that point, [Petitioner] and his uncle were detained and questioned regarding the homicide, and then released.

[Petitioner] initially denied any knowledge of the crime. After going to church the next day, however, he contacted the police, through his cousin, and asked to talk to them. He made an initial audiotaped statement in his apartment, with

2

> his cousin assisting as his interpreter, and then made an additional videotaped statement at the police station, interpreted by a bilingual police officer. Transcripts of both statements, with translations by a certified court interpreter, were introduced in evidence at [Petitioner]'s trial.
>
> The only genuinely disputed factual issue at trial was [Petitioner]'s state of mind at the time of the killing. In [Petitioner]'s confessions, he said he became very angry at the victim after she took his money, denied having taken it, and then refused his repeated requests that she leave his apartment. [Petitioner] disavowed any intent to kill the victim, explaining that he assaulted her only because he was angry and wanted her to leave. According to [Petitioner], he hit the victim harder than he intended because he was confused by the alcohol and drugs he had ingested.
>
> [Petitioner]'s mother testified to the severe physical and psychological abuse that [Petitioner] suffered at the hands of his stepfather when he was a child. [Petitioner] also introduced expert testimony that he suffered from mild mental retardation, impaired impulse control, brain damage, depression, and post-traumatic stress disorder. A prosecution expert disputed these diagnoses, but acknowledged that [Petitioner] was an emotional and impulsive person who had a need for immediate gratification and arrived at decisions without much thought.

(Ans., Ex. 3 at 2–4) (footnotes removed).

As grounds for federal habeas relief, Petitioner alleges that (1) the trial court violated his right to due process by refusing to instruct the jury on the lesser-included offense of voluntary manslaughter; (2) the jury instructions on second degree felony murder permitted the jury to return a guilty verdict on the murder charge based on a legally impermissible theory, in violation of his Sixth and Fourteenth Amendment rights to a jury trial and to due process; and (3) the trial court's use of CALJIC No. 2.03 violated his Sixth and Fourteenth Amendment rights to a jury trial and to due process.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

1 law, as determined by the Supreme Court of the United States; or (2) resulted in a decision
2 that was based on an unreasonable determination of the facts in light of the evidence
3 presented in the State court proceeding." 28 U.S.C. § 2254(d).

4     "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state
5 court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of
6 law or if the state court decides a case differently than [the] Court has on a set of materially
7 indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

8     "Under the 'unreasonable application' clause, a federal habeas court may grant the
9 writ if the state court identifies the correct governing legal principle from [the] Court's
10 decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at
11 413. "[A] federal habeas court may not issue the writ simply because that court concludes in
12 its independent judgment that the relevant state-court decision applied clearly established
13 federal law erroneously or incorrectly. Rather, that application must also be unreasonable."
14 Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask
15 whether the state court's application of clearly established federal law was "objectively
16 unreasonable." Id. at 409.

## DISCUSSION

### 1. Instruction on Lesser-Included Offense

19     Petitioner claims that the trial court violated his right to due process by refusing to
20 instruct the jury on the lesser-included offense of voluntary manslaughter. (Pet. at 6.) At
21 trial, defense counsel asked the trial court to instruct the jury on voluntary manslaughter.
22 (Ans., Ex. 2HH at 969–71.) The trial court denied this request on grounds that there was
23 insufficient evidence to warrant the giving of such an instruction. (Id. at 976–77.) The trial
24 court did, however, instruct the jury on first and second degree murder, and involuntary
25 manslaughter. (Id., Ex. 2II at 1006–18.)

26     The state appellate court rejected Petitioner's claim, finding that "there is no
27 reasonable probability that the jury would have convicted [Petitioner] of voluntary
28

4

manslaughter." (Id., Ex. 3 at 8.) Though "[t]he victim's conduct here was provocative to some degree, but we do not believe a reasonable jury would have found that the provocation rose to such a level as to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." (Id.)

In California, voluntary manslaughter is "the unlawful killing upon a sudden quarrel or heat of passion." People v. Steele, 27 Cal 4th. 1230, 1252 (citation removed). For voluntary manslaughter to apply, both "provocation and heat of passion must be affirmatively demonstrated by the evidence." (Id.)

The failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000). However, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." Id., 219 F.3d at 929 (citing Bashor v. Risley, 730 F.2d at 1240). Solis suggests that there must be substantial evidence to warrant the instruction on the lesser-included offense. Id., 219 F.3d 929–30 (no duty to instruct on voluntary manslaughter as lesser-included offense to murder because evidence presented at trial precluded a heat of passion or imperfect self-defense instruction; no duty to instruct on involuntary manslaughter because evidence presented at trial implied malice).

Petitioner's claim is foreclosed by the above-cited authorities. Firstly, Petitioner has no federal constitutional right to instruction on a lesser-included offense. See Solis, 219 at 929. Secondly, Petitioner has not shown that his case is an exception to the general rule announced in Solis. Specifically, there was no substantial evidence to support the giving of a voluntary manslaughter instruction. While the victim's refusal to leave Petitioner's apartment and her (possible) theft of money could have been provocative, this Court cannot say that the provocation rose to such a level as to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection. On this record, the state appellate court's adjudication was not constitutionally erroneous. Accordingly, Petitioner's

1  claim is DENIED.

## 2. Jury Instruction on Second Degree Felony Murder

Petitioner claims that the trial court violated his rights to due process and a fair trial when it gave improper instructions on second degree felony murder. (Pet. at 14.) These instructions, according to Petitioner, improperly permitted the jury to return a guilty verdict on the murder charge based on a theory of felony-murder. (Id.)

The state appellate court summarized the relevant facts and its holding as follows:

> It is undisputed that [Petitioner] could not properly have been convicted of felony murder in this case. Nonetheless, both the trial court's jury instructions and the prosecutor's closing argument mentioned the concept of felony murder, in the context of distinguishing between murder and the lesser included offense of involuntary manslaughter.
>
> The instructions on involuntary manslaughter made clear that the elements of this crime include the requirement that the killing have resulted from a misdemeanor — in this case, a battery — rather than a felony. After defining battery, however, the instructions went on to explain, in language taken from CALJIC No. 8.51, that "If the person causes another['s] death while committing a felony which is dangerous to human life, the crime is murder. If a person causes another['s] death while committing a misdemeanor which is dangerous to human life under the circumstances of its commission, the crime is involuntary manslaughter." [Petitioner] contends that this instruction should have been omitted.
>
> [Petitioner] further contends that the error was compounded by portions of the prosecutor's closing argument. Specifically, in arguing that [Petitioner]'s crime could not be characterized as involuntary manslaughter because [Petitioner]'s assault was a felony rather than a misdemeanor, the prosecutor repeated the sentence from CALJIC No. 8.51 quoted ante, and added that, "When the force used rises to the level of felony force, malice is implied. And when you imply malice because of the level of the force, you get implied-malice second-degree [sic] murder." Then, after arguing that the jury should return a true finding on the deadly weapon enhancement, the prosecutor reiterated that "because the use of the bat is true, I would suggest to you that this is, at a minimum, at the very least, a second-degree [sic] murder under implied malice." Finally, in her rebuttal, the prosecutor again argued that the crime had to be murder rather than involuntary manslaughter because "There is not doubt that he knew that this was lethal force. This is a felony act. Malice is implied. That's murder."
>
> [Petitioner] argues that these references to felony murder may have misled the jury into convicting him of second degree murder on a felony murder theory rather than on the basis of implied malice. [Petitioner] further contends . . . that the error requires reversal because the record does not affirmatively demonstrate that the jury did not rely on a felony murder theory.
>
> . . . This is not a case in which the jury was expressly instructed that it could

6

find [Petitioner] guilty on a legally inapplicable theory, or in which the jury was not instructed on an essential element of the crime. Rather, this is a case in which the jury was properly instructed on all of the elements of first or second degree murder, but in addition, the trial court made an erroneous passing reference to felony murder. This is akin to the type of confusion or conflict in the instructions which has been held to be subject to the . . . harmless error analysis.

. . . .

We further agree with respondent that the error was harmless . . . The instructions expressly informed the jury that, in order to find [Petitioner] guilty of second degree murder, it had to find either that [Petitioner] had the intent to kill or, in the absence of such an intent, that "one, the killing resulted [from] an intentional act; two, the natural consequences of the act are dangerous to human life; and three, the act was deliberately performed with knowledge of the danger to and with conscious disregard for human life." [Petitioner] does not challenge the correctness or completeness of this instruction in and of itself, but relies only on the trial court's having made a passing reference to felony murder, in an isolated sentence and in a different context. <u>In addition, even in this context, the court defined battery as a misdemeanor, not a felony, and did not mention any other crime [Petitioner] might have committed that the jury could have interpreted as the predicate for felony murder.</u>

Nonetheless, [Petitioner] speculates that because "[a]ssault with a deadly weapon is a commonly-known felony," and the prosecutor's argument characterized [Petitioner]'s use of the baseball bat as a felonious assault, the jury might have supplied it as the predicate felony for a felony murder conviction, and thus convicted [Petitioner] without finding the requisite malice. This argument overlooks the fact that, with the exception of the isolated reference of which [Petitioner] complains, the jury was never even told of the existence of the felony-murder rule, much less instructed that it could convict [Petitioner] on that basis. Thus, in order to find the error harmful, we would have to assume that the jury not only found that [Petitioner] had committed a predicate felony, in the absence of any instructions on that subject, but that it also disregarded the trial court's explicit instructions regarding the requisite intent for second degree murder, choosing instead to base its verdict on erroneous references to felony murder embedded in the prosecutor's closing argument.

This is not the law. In analyzing a claim of error based on misstatements of law by the prosecutor during closing argument, "we presume that the jury relied on the instructions, not the arguments, in convicting defendant. '[I]t should be noted that the jury, of course, could totally disregard all the arguments of counsel' . . . [O]ur presumption [is] that 'the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' [Citation removed.]

Moreover, there is ample evidence in the record supporting [Petitioner]'s conviction of second degree murder on an implied malice theory, based on the conscious disregard for life that is evident from [Petitioner]'s course of conduct in hitting the victim's head twice with a metal baseball bat, and then abandoning her in a bleeding and unconscious state. For all of the foregoing reasons, we can only conclude that the erroneous references to felony murder in the instructions and the closing argument were harmless beyond a reasonable

7

doubt.

(Ans., Ex. 3 at 8–12) (footnotes and italics removed) (emphasis added).

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. U.S. v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

Petitioner is not entitled to habeas relief on this claim. Firstly, the misstatements of the law are not as damaging as Petitioner asserts. The erroneous instruction, significantly, did not allow the jury to find murder on the facts of the case. While the instruction allowed the jury to find murder if the predicate act was a felony, it was not allowed to so find if the predicate act was a misdemeanor. The trial court specifically described Petitioner's predicate act as a misdemeanor, not as a felony. Also, the erroneous instruction was given once, and was, in the words of the state appellate court, a "passing reference." Finally, as to the prosecutor's alleged compounding of the error, the trial court specifically instructed the jury that it "must accept and follow the law as I state it to you." (Ans., Ex. 1C at 566.) "If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions." (Id.) This Court must presume that the jurors followed their instructions. See Richardson v. Marsh, 481 U.S. 200, 206 (1987).

8

1   Secondly, there was sufficient evidence on which a reasonable juror could have found
2   Petitioner guilty of second degree murder beyond a reasonable doubt. As stated above, the
3   jury received correct instructions on murder. Murder, whether first or second degree, "is the
4   unlawful killing of a human being . . . with malice aforethought." See Cal. Pen. Code § 187.
5   Petitioner beat the victim in the head with a baseball bat, knocking her unconscious. He
6   dragged the victim's body to the back yard, and, when he checked on her an hour later, she
7   was dead, indicating that the blows were severe enough to cause death within a fairly short
8   time. He moved the body, and then washed away the blood before returning to his
9   apartment. Petitioner moved the body again the next day, depositing it on the sidewalk.
10  From these facts — Petitioner attacking the victim in a vulnerable area of her body with a
11  powerful weapon and with great force, his failure to check on the victim for nearly an hour
12  after the brutal beating, his failure to seek medical attention for her when she was still alive,
13  his abandonment of her to let her die, his cleaning up the crime scene and disposing of the
14  body — a reasonable juror could infer that Petitioner killed the victim with the intention of
15  causing the victim's death. Accordingly, this claim is DENIED.

### 3. CALJIC No. 2.03

Petitioner claims that the trial court's use of CALJIC No. 2.03 violated his Sixth and Fourteenth Amendment rights to a jury trial and to due process. (Pet. at 15.)

The state appellate court summarized the relevant facts and its holding as follows:

> Over [Petitioner]'s objection, the trial court instructed the jury that "If you find that before this trial the defendant made a willfully false or deliberately misleading statement concerning the crime for which he is now being tried, you may consider that statement as a circumstance tending to prove consciousness of guilt. However, that conduct by itself is not sufficient to prove guilt. And its weight and significance, if any, are for you to decide." (CALJIC No. 2.03.) [Petitioner] contends that giving this instruction was error, because it improperly pinpointed one piece of evidence in the prosecution's case, and tended to lighten the prosecution's burden of proof. He acknowledges, however, that the California Supreme Court has rejected his position . . .We are, of course, bound by the high court's decision. [Citation removed.]
>
> In any event, even if the instruction had been given in error, any such error was harmless beyond a reasonable doubt. Given the admission into evidence of [Petitioner]'s unequivocal confessions, coupled with the forensic evidence corroborating [Petitioner]'s guilt, there is simply no possibility that the jury's

9

      decision to convict him of second degree murder was based on, or even influenced by, an inference of guilty conscience based on his initial false statements.

(Ans., Ex. 3 at 12–13.)

"In California, this instruction is proper in cases in which there is testimony indicating that before trial the defendant had made several statements, relating to the crime, which were inconsistent with each other." Turner v. Marshall, 63 F.3d 807, 819–20 (9th Cir. 1995) (citations removed) (overruled on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999) (en banc)).

Petitioner is not entitled to habeas relief on this claim. Firstly, there was a proper factual basis for the instruction. Specifically, Petitioner did at first deny having any knowledge of the crime, as the state appellate court found. Secondly, the Ninth Circuit has held that the use of CALJIC No. 2.03 does not violate a defendant's constitutional rights. Turner, 63 F.3d at 820. This Court is bound by the Ninth Circuit's holding in Turner. Accordingly, Petitioner's claim is DENIED.

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

//
//
//
//
//
//
//

10

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

DATED: April 21, 2010

_____
MARILYN HALL PATEL
United States District Judge

# NOTES

1. <u>See</u> Cal. Pen. Code §§ 187 & 12022(b)(1).